### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **Virginia Brown,** | : | |
| 1744 Keela Drive | : | |
| Pataskala, Ohio 43062 | : | |
| | : | |
| Plaintiff, | : | Case No. 2:26-CV-214 |
| | : | |
| v. | : | Judge |
| | : | |
| **Abbott Laboratories** | : | Magistrate Judge |
| 3300 Stelzer Road | : | |
| Columbus, Ohio 43219 | : | |
| ***Agent for Service of Process*** | : | |
| CT Corporation System | : | |
| 4400 Easton Commons Way, Suite 125 | : | |
| Columbus, Ohio 43219 | : | |
| | : | |
| Defendant. | : | |

### COMPLAINT
### (Jury Demand Endorsed Hereon)

Plaintiff Virginia Brown ("Plaintiff"), by and through undersigned Counsel, states the following as her Complaint for claims arising under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*, the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, Ohio's antidiscrimination laws, R.C. Chapter 4112, and breach of contract/promissory estoppel against Defendant Abbott Laboratories ("Defendant").

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over Counts I, III and V pursuant to 28 U.S.C. § 1331 because the claims are set forth pursuant to the laws of the United States of America.

2. The Court has supplemental jurisdiction over Counts II, IV, VI, VII and VIII, Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367, because the claims arise out of the same set of operative facts.

1

3. Venue is proper pursuant to 28 U.S.C. § 1391 because the events giving rise to the cause of action occurred in Franklin County, Ohio, within the Southern District of Ohio, Eastern Division.

**PARTIES**

4. Plaintiff is a natural person residing in Franklin County, Ohio.

5. Plaintiff is disabled as defined by the ADA, 42 U.S.C. § 12102(1)(A), and Ohio's antidiscrimination law, R.C. 4112.01(A)(13), and/or Plaintiff has a record of disabilities as defined by the ADA, 42 U.S.C. § 12102(1)(B), and Ohio's antidiscrimination law, R.C. 4112.01(A)(13), and/or Plaintiff was regarded as having disabilities as defined by the ADA, 42 U.S.C. § 12102(1)(C), and Ohio's antidiscrimination law, R.C. 4112.01(A)(13).

6. Specifically, Plaintiff suffers from Major Depression Disorder, Post Traumatic Stress Disorder, Severe Anxiety, tumors on the adrenal gland and a kidney, diabetic neuropathy, heart disease, nonalcoholic cirrhosis of the liver (fatty liver disease), and irritable bowel syndrome (collectively hereinafter "disabilities," unless indicated otherwise).

7. Plaintiff's disabilities substantially interfere with the major life activities of thinking, concentrating, learning, reading, communicating, sleeping, eating, caring for herself, working, and interacting with others, as defined in the ADA, 42 U.S.C. § 12102(2)(A), and Ohio's antidiscrimination law, R.C. 4112.01(A)(13).

8. Plaintiff's disabilities also substantially impact her major bodily functions of neurological, brain function, normal cell growth, respiratory, and circulatory, as defined in the ADA, 42 U.S.C. § 12102(2)(A), and Ohio's antidiscrimination law, R.C. 4112.01(A)(13).

9. At all times, Plaintiff was an employee of Defendant as that term is defined by the ADA, 42 U.S.C. § 12111(4), and R.C. 4112.01(A)(3).

10. At all times relevant herein, Plaintiff was an employee of Defendant as that term is defined by Title VII, 42 U.S.C. § 2000e(f), and R.C. 4112.01(A)(3).

11. Defendant is multinational healthcare corporation that develops, manufactures, and sells health care products.

12. At all times relevant herein, Defendant was an employer of Plaintiff as that term is defined by the ADA, 42 U.S.C. § 12111(5), and R.C. 4112.01(A)(2)

13. At all times relevant herein, Defendant was an employer of Plaintiff as that term is defined by Title VII, 42 U.S.C. § 2000e(b), and R.C. 4112.01(A)(2).

**EXHAUSTION OF REMEDIES**

14. Plaintiff dual filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Ohio Civil Rights Commission ("OCRC") on or about January 13, 2025, Charge No. 532-2025-01459, attached hereto as Exhibit 1, against Defendant alleging, as relevant herein, discrimination based on race, disability, and retaliation based on complaints of race discrimination.

15. Plaintiff received a Notice of Right to Sue Letter dated November 24, 2025, attached hereto as Exhibit 2.

**FACTS COMMON TO ALL COUNTS**

16. On or about May 8, 2013, Defendant offered Plaintiff a position of Senior Scientist with the following components as outlined in an employment contract, attached hereto as Exhibit 3:

   a. Abbott benefits

   b. A sign-on bonus of $10,000.00 will be advanced to you (less any required tax withholdings) in a future payroll check after you begin working at Abbott, on or about

3

your 30-day anniversary. If, for any reason, you do not complete twelve months of continuous active service, you must repay the advance before your last day of work[…]

   c. Participation in Cash Profit Sharing at a target between 5-7% pro-rated based on your start date. Eligibility and payments are governed by the terms of the plan.

   d. Long-term incentive (Interim Stock based on start date this year @ 400 RSUs governed by the terms of the plan)

   e. Relocation assistance (enclosed).

17. Upon information and belief, Defendant retained a copy of the signed employment agreement.

18. Plaintiff accepted the offer of employment, and she began her employment with Defendant as a Senior Scientist on or about June 26, 2013. Despite the employment contract, Defendant did not fulfill the terms of the agreement. Specifically, Defendant agreed to provide Plaintiff with 400 Restricted Stock Units ("RSU") per year. In addition, Defendant agreed to pay any fees Plaintiff incurred in purchasing her home, but Defendant did not pay the fees associated with building her house. Plaintiff requested an extension to finish building her home, but Defendant failed to grant her extension even though it granted extensions for similarly situated employees.

19. During 2019, Defendant promoted Plaintiff to Research Scientist. Plaintiff received another promotion to Senior Research Scientist, which is the position she held at the time of her unlawful termination on or about March 19, 2024.

20. While employed by Defendant, Plaintiff was subjected to racist name calling and jokes.

21.     By way of one or more non-exhaustive examples, one of Plaintiff's junior coworkers referred to Plaintiff as "Aunt Jemima." When Plaintiff questioned what the junior called her, the coworker again referred to Plaintiff as "Aunt Jemima."

22.     The term, "Aunt Jemima" is objectively rooted in the Jim Crow-era perceptions of Black women, specifically the Southern "mammy" stereotype of a loyal and submissive servant. [1]

23.     Despite the obviously racist characterization, the junior coworker seemed to think that the racist term was funny, instead of offensive. When Plaintiff confronted the junior coworker, the junior coworker indicated that Plaintiff should not have confronted her in front of others, even though the coworker referred to Plaintiff as "Aunt Jemima" in front of others.

24.     Rene Rodriguez repeatedly made comments about Emmitt Till, a Black teenager, being murdered, stating, "Boy, don't you be whistling at my wife." Plaintiff confronted Mr. Rodriguez, explaining the significance of Mr. Till's death and the cruelty and suffering Mr. Till experienced. Plaintiff informed Mr. Rodriguez that Mr. Till was fourteen years old when he was tortured and murdered, and that no one should laugh or joke about the murder.

25.     On another occasion, Mr. Rodriguez spoke "Ebonics" to Plaintiff in order to make fun of Plaintiff and her race. Mr. Rodriguez attempted to imitate Plaintiff by saying, "Rene, where you be going? What you be talking about?"

26.     Plaintiff complained to her supervisor about Mr. Rodriguez trying to imitate her when Plaintiff never spoke that way. Plaintiff complained to her boss that she did not need Ebonics to understand or communicate with others.

27.     Despite Plaintiff's complaints about Mr. Rodriguez, his behavior never changed.

---

[1]    See https://www.npr.org/2021/02/10/966166648/aunt-jemima-no-more-pancake-brand-renamed-pearl-milling-company (last accessed February 17, 2026).

28. Although Plaintiff was the senior person on site, Mr. Rodriguez constantly ignored Plaintiff's direction and refused to change his behavior.

29. Joseph Carlos was Plaintiff's direct manager, and he would tell racist Black jokes to Plaintiff and repeat them in larger audiences. Plaintiff complained to Mr. Carlos that she and other people were uncomfortable with his jokes, but he continued to make racist jokes.

30. Approximately two months after the murder of George Floyd by police on May 25, 2020, Robert Ford, Chief Executive Officer, called a meeting with over 160 people, including Plaintiff, to discuss race relations and how Black people felt about their lives at Defendant. Black employees, including Plaintiff, were very open about the ongoing discriminatory treatment they endured during their employment with Defendant.

31. Mr. Ford advised that he was unaware that Black people were always told they had to work twice as hard just to be considered equal. Mr. Ford confirmed that he learned in his career that management leaders were not willing to take chances on people of color. Mr. Ford also corroborated that Defendant consisted of unconscious bias and racism and that Defendant could train for unconscious bias, and he would not tolerate racism. Mr. Ford stated that he reached out to his staff because he wanted to look at the number of Black employees in the company, as well as what their grades were. Mr. Ford was concerned about the low numbers of Black employees and Black employees being in lower grade positions. Mr. Ford then assured the Black employees at the meeting that their issues would be addressed and resolved.

32. Mr. Ford directed management to conduct meetings with their staff about racism and sexism within Abbott. Hakim Bouzamondo, Divisional Vice President of Abbott's Nutrition Global Research and Development, held a meeting though he did not fully

understand the reason for the meeting, except to check it off his list of tasks. Plaintiff expressed concerns about complaining about racism and sexism within Abbott to Mr. Ford, which Mr. Bouzamondo promptly ignored Plaintiff.

33. Plaintiff emailed Mr. Ford multiple times about working in a hostile work environment, being passed over for promotions while less qualified coworkers were promoted, and lower graded employees received higher raises.

34. Plaintiff also discussed denial of stock options that were promised to her at her hire and Abbott's failure to pay the closing costs on the purchase of her house in contravention of her employment contract.

35. Plaintiff complained to Mr. Ford that her stock options had been reduced in retaliation for complaining to him about discrimination. Plaintiff also complained that she was getting lower raises than her white, male coworkers.

36. One year, it was announced that all raises would be at least 4%, but Plaintiff's raise was less than 4%, despite a good performance review. Plaintiff again complained to Mr. Ford of the retaliation since she began informing him of her complaints of racial discrimination.

37. Mr. Ford assigned the following individuals to investigate Plaintiff's complaints of discrimination and retaliation: Essex Michell, Employee Relations; Mary K. Moreland, Senior Vice President of Corporate Human Resources; Sarah Schmit, Director; Jada Malone, Human Resources Director; and Sharon Larson, Manager of Employee Relations.

38. Each person that Mr. Ford assigned to speak with Plaintiff did absolutely nothing but provide excuses and report back to Mr. Ford that everything was handled while failing to resolve any of Plaintiff's complaints.

39. Mr. Carlos, Plaintiff's direct supervisor, told Plaintiff on several occasions that Steven Hartline, Director, did not like her and that Mr. Carlos needed to get Plaintiff in line and under control because of all of her complaints of discrimination and retaliation.

40. Mr. Carlos and Mr. Hartline repeatedly told Plaintiff that her work performance was subpar compared to her coworkers, but Plaintiff's coworkers repeatedly sought her out for assistance.

41. Mr. Carlos and Mr. Hartline isolated Plaintiff by not meeting with her for one-on-one meetings for approximately eight months. Mr. Carlos and Mr. Hartline continued to meet with all of Plaintiff's coworkers on the team.

42. In addition, Mr. Carlos and Mr. Hartline purposefully failed to update Plaintiff on her projects and then brought others into Plaintiff's projects without notifying her and without her input. The known intent was to make Plaintiff look incompetent to handle her own projects by taking her out of the information loop on her assigned projects.

43. Plaintiff was passed over for leadership position, which was a lateral move for Plaintiff. The leadership position for ZonePerfect was given to Alex Seigwein, who was a young man who was not African American.

44. Plaintiff was also passed over for a promotion for the lead for the Glucerna Bar project. Frank Wang was promoted to this position.

45. Neither Mr. Seigwein nor Mr. Wang had the experience to manage these products, so both consistently sought assistance from Plaintiff.

46. Mr. Carlos portrayed Plaintiff as an angry Black woman, labeling her mean, distant, defensive and direct. Young white males were not labeled as mean, distant, defensive and

8

direct, even if they had these characteristics. Mr. Carlos portrayed Plaintiff as incompetent, unstable, unprofessional and incapable of doing her job in meetings with her peers.

47. Mr. Carlos repeatedly undermined Plaintiff's authority and sabotaged her professional relationships with her colleagues by publicly questioning her competence. Therefore, Plaintiff requested to be moved to another project. Mr. Carlos refused the request, stating that the project needed her because it could not afford to fail and Plaintiff was key to the success of the project. This statement was in direct contradiction to his ongoing public denigration and sabotage of Plaintiff as incompetent.

48. Plaintiff began short-term disability for a Rotator Cuff injury and Major Depression Disorder on February 21, 2024.

49. While Plaintiff was on short-term disability, Ms. Malone and Mr. Bouzamondo notified Plaintiff that her job was being eliminated because a plant in California was being shut down.

50. Plaintiff was treated less favorably in the terms, benefits, and/or conditions of employment than similarly situated others because she was the only employee on her team terminated from Defendant as a result of the shutdown of the California plant. All of Plaintiff's other team members were reassigned or transferred to different positions within Defendant's organization.

**COUNT I: RACE DISCRIMINATION**
**TITLE VII, 42 U.S.C. 2000e, *et seq.***

51. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

52. Plaintiff is a member of a protected class because she is African American.

53. Plaintiff was qualified for her position.

9

54.	Plaintiff suffered an adverse action when Defendant failed to promote Plaintiff because of her race and terminated her employment because of her race.

55.	Defendant replaced Plaintiff with a non-African American employee and/or Defendant treated similarly situated non-African American coworkers more favorably than Plaintiff.

56.	Defendant discriminated against Plaintiff because of her race in violation of 42 U.S.C. § 2000e-2(a)(1) and/or race was a motivating factor in Defendant's decision to terminate Plaintiff's employment in violation of 42 U.S.C. § 2000e-2(m).

## COUNT II: RACE DISCRIMINATION
## R.C. CHAPTER 4112

57.	Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

58.	Plaintiff is a member of a protected class because she is African American.

59.	Plaintiff was qualified for her position.

60.	Plaintiff suffered an adverse action when Defendant failed to promote Plaintiff because of her race and terminated her employment because of her race.

61.	Defendant replaced Plaintiff with a non-African-American employee and/or Defendant treated similarly situated non-African American coworkers more favorably than Plaintiff.

62.	Defendant discriminated against Plaintiff because of her race in violation of Ohio's antidiscrimination laws, R.C. 4112.02(A).

## COUNT III: RACE RETALIATION
## 42 U.S.C. § 2000e-3(a)

63.	Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

64.	Plaintiff engaged in protected activity under Title VII because she complained about race discrimination and retaliation on multiple occasions throughout her employment.

65.     Defendant knew about the complaints of race discrimination and retaliation because the complaints were made to Mr. Ford, the CEO of Defendant.

66.     Defendant took adverse actions against Plaintiff when it failed to promote her and terminated her employment.

67.     There is a causal connection between Plaintiff's protected activity and the failure to promote her and her termination.

68.     Defendant retaliated against Plaintiff in violation of 42 U.S.C. § 2000e-3(a).

### COUNT IV: RACE RETALIATION
### R.C. 4112.02(I)

69.     Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

70.     Plaintiff engaged in protected activity because she complained about race discrimination and retaliation on multiple occasions throughout her employment.

71.     Defendant knew about the complaints of race discrimination and retaliation because the complaints were made to Mr. Ford, the CEO of Defendant.

72.     Defendant took adverse actions against Plaintiff when it failed to promote her and terminated her employment.

73.     There is a causal connection between Plaintiff's protected activity and the failure to promote her and her termination.

Defendant retaliated against Plaintiff in violation of R.C. 4112.02(I).

### COUNT V: DISABILITY DISCRIMINATION
### AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101, *et seq.*

74.     Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

75.     Plaintiff has a disability within the meaning of the ADA because she suffers from multiple disabilities.

11

76. Plaintiff was qualified for her job with or without accommodations.

77. Plaintiff suffered an adverse action when Defendant terminated her employment.

78. Defendant knew about Plaintiff's disabilities.

79. Similarly situated non-disabled employees were treated more favorably than Plaintiff and/or Plaintiff was replaced with a non-disabled employee.

80. Based on the foregoing, Defendant discriminated against Plaintiff because of her disabilities in violation of the ADA, 42 U.S.C. § 12112(a).

## COUNT VI: DISABILITY DISCRIMINATION
## R.C. CHAPTER 4112

81. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

82. Plaintiff has a disability within the meaning of the Ohio Revised Code because she suffers from multiple disabilities.

83. Plaintiff was qualified for her job with or without accommodations.

84. Plaintiff suffered an adverse action when Defendant terminated her employment.

85. Defendant knew about Plaintiff's disabilities.

86. Similarly situated non-disabled employees were treated more favorably than Plaintiff and/or Plaintiff was replaced with a non-disabled employee.

87. Based on the foregoing, Defendant discriminated against Plaintiff because of her disabilities in violation of Ohio's antidiscrimination laws, R.C. 4112.02(A).

## COUNT VII: BREACH OF CONTRACT

88. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

89. Defendant approached Plaintiff to return to work with Defendant in 2013. Plaintiff previously left Defendant's employ in 2009.

90. Defendant and Plaintiff engaged in negotiations for a compensation package for Plaintiff's to return to employment with Defendant. Among other things, Defendant and Plaintiff agreed that Plaintiff's compensation package would provide 400 RSU to Plaintiff every year and reimburse Plaintiff for the expenses associated with moving and purchasing a home.

91. Plaintiff performed the terms of her employment contract.

92. Defendant failed to uphold the negotiated terms of the employment contract.

## COUNT VIII: PROMISSORY ESTOPPEL

93. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

94. Defendant approached Plaintiff to return to work with Defendant in 2013. Plaintiff previously left Defendant's employ in 2009.

95. Defendant and Plaintiff engaged in negotiations for a compensation package for Plaintiff's to return to employment with Defendant. Among other things, Defendant and Plaintiff agreed that Plaintiff's compensation package would provide 400 RSU to Plaintiff every year and reimburse Plaintiff for the expenses associated with moving and purchasing a home.

96. Defendant knew or reasonably should have known that Plaintiff relied on Defendant's compensation and employment agreement as negotiated as Plaintiff accepted the negotiated compensation package and offer to return to employment with Defendant.

97. Plaintiff relied on the negotiated compensation package and accepted the offer of re-employment with Defendant.  Plaintiff did so to her detriment.

98. Defendant refused and failed to honor Plaintiff's employment agreement.

**WHEREFORE**, Plaintiff Virginia Brown prays for judgment in her favor, back pay, front pay or reinstatement, punitive damages, pain and suffering, compensatory and non-economic damages in excess of $75,000, attorneys' fees, costs, pre- and post-judgment interest, and any other relief to which she may be entitled.

Respectfully Submitted,

*s/Laren E. Knoll*
Laren E. Knoll (0070594)
**THE KNOLL LAW FIRM, LLC**
7240 Muirfield Drive, Suite 120
Dublin, Ohio 43017
Telephone: (614) 372-8890
Facsimile: (614) 452-4850
Email: lknoll@knolllaw.com
*Trial Counsel for Plaintiff Virginia Brown*

*/s/ Daniel I. Bryant*
Daniel I. Bryant (0090859)
**BRYANT LEGAL, LLC**
4400 N. High St., Suite 310
Columbus, Ohio 43214
Phone: (614) 704-0546
Facsimile: (614) 573-9826
Email: dbryant@bryantlegalllc.com
*Co-Counsel for Plaintiff Virginia Brown*

## JURY DEMAND

Plaintiff requests a trial by a jury on all issues set forth herein.

*s/Laren E. Knoll*
Laren E. Knoll (0070594)
The Knoll Law Firm, LLC
*Trial Attorney for Plaintiff Virginia Brown*

14